UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| MCGUINNESS II, INC. and | Case No.: 8:13-bk-00414-KRM [Lead Case] |
| JR EQUITY CORPORATION, | Case No.: 8:13-bk-00417-KRM |
| Debtors. | (Jointly Administered Cases) |
| _____/ | |

## WELLS FARGO'S MOTION TO REOPEN CHAPTER 11 AND MOTION TO CONVERT CASES TO CHAPTER 7

Wells Fargo Bank, N.A., ("Wells Fargo"), by its undersigned counsel, files this Motion to Reopen Chapter 11 and to Convert Cases to Chapter 7, pursuant to U.S.C. § 1112(b) (the "Motion"). In support of its motion, Wells Fargo states:

### Relief Requested

Wells Fargo seeks conversion of these cases from Chapter 11 to Chapter 7. The confirmed plan calls for Wells Fargo to receive quarterly payments equal to fifty percent (50%) of the Debtors' net income in payment of one of Wells Fargo's allowed secured claims over five years. The Debtors have materially breached the terms of the Confirmed Plan by inflating their expenses to ensure that they show no net income and have no payment obligations under this provision of the plan.

Wells Fargo and the Debtors negotiated this quarterly payment provision in light of the significant profits the Debtors showed during the Chapter 11 and the cash reserves that were being built. However, three out of four of the Debtors' quarterly post-petition accountings have shown no net income to split with Wells Fargo due to substantially increased expenses including increased salaries to the insiders (with the other quarterly report providing only nominal net income). Despite Wells Fargo's inquiries and concerns, the Debtors have not properly explained

the expenses or cured the deficiencies in the quarterly accountings. These increased expenses stand in sharp contrast to the expenses evidenced in the Debtors' monthly operating reports during the bankruptcy case and are contrary to the Debtors' complaints of reduced revenue. Wells Fargo is not receiving the bargained-for treatment under the plan. Conversion to a chapter 7 is justified by the circumstances of the case and is in the best interest of all creditors.

### Background Allegations

1. On January 14, 2013, JR Equity Corporation ("JR Equity") and McGuiness II, Inc. ("McGuiness") (JR Equity and McGuiness collectively, the "Debtors") filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors' cases were jointly administered by order of this Court.

2. Pre-petition, Wells Fargo made loans to the Debtors, secured by real property owned by JR Equity and personal property owned by the Debtors. The Debtors defaulted on their obligations to Wells Fargo, who instituted foreclosure proceedings and obtained a foreclosure judgment. The Debtors filed for bankruptcy on the eve of the scheduled foreclosure sale of the real property.

3. During the course of the Debtors' jointly administered Chapter 11 cases, the Debtors' monthly operating reports showed significant profits, allowing the Debtors to accumulate over $100,000 in cash during the course of the case. See Doc. Nos. 85, 115, 143, 169, 189 and 210 (JR Equity monthly operating reports) and Doc. Nos. 84, 114, 137, 168, 188, 208 and 211 (McGuiness monthly operating reports).

4. On June 20, 2013, Wells Fargo objected to the Debtors' First Amended Joint Chapter 11 Plan of Reorganization, objecting to the treatment of its claims and the proposed

increase in officer's salary (Doc. No. 173) (the "Objection"). Wells Fargo and the Debtors reached an agreement to resolve the Objection prior to confirmation.

5.    On July 8, 2013, this Court entered an order (Doc. No. 200) confirming the Debtors' First Amended Joint Chapter 11 Plan of Reorganization (Doc. No. 148) (the "Confirmed Plan").

6.    Pursuant to the Confirmed Plan, Wells Fargo's secured claims are to receive the following treatment:

   a. Class 2a – $450,000 claim secured by the real property of JR Equity to be paid over ten (10) years with interest for the first two years at 5% and for the remaining term at the prime lending rate plus 1.75% adjusted annually, with any annual interest rate increase capped at 1% (See Doc. No. 148, p. 5) (the "First Secured Claim"); and

   b. Class 2b –Wells Fargo shall have an allowed secured claim for $410,000.00 which shall continue to be secured Postpetition by the personal property of the Debtors subject only to the security interests of any floor plan financing. Wells Fargo shall receive quarterly payments equal to fifty percent (50%) of the Debtors' Net Income with interest for the first two years at 5% and for three years at the prime lending rate plus 1.75%, adjusted annually, with any annual interest rate increase capped at 1%, amortized over 36 years. The Debtors shall make monthly payments of $2,000.00 to Wells Fargo, which shall be applied to both principal and interest as applicable. Within 30 days of the end of each quarter, the Debtors shall calculate their Net Income for the previous quarter, provide to Wells Fargo an accounting and pay to Wells Fargo 50% of the Net Income. Such quarterly payments shall be applied to the outstanding principal. So long as the Debtors make their payments under the Plan to Wells Fargo on account of its Secured Class 2a and 2b claims, Wells Fargo has agreed to forebear on pursuing its rights against the Catapanos arising out of any guarantee executed by the Capatanos in connection with the Debtors. (See Doc. No. 200, p. 3, ¶ 5i.) (the "Second Secured Claim")

7.    Wells Fargo and the Debtors negotiated the terms of the treatment of the Second Secured Claim to account for (a) the significant profits the Debtors made during the jointly

administered Chapter 11 cases and (b) Wells Fargo's agreement to the increased officers' salary to be paid by the Debtor (i.e. $15,000 per month).[1]

**Basis for Requested Relief**

8. The Debtors have materially defaulted under the terms of the Confirmed Plan. Three out of four of the Debtors' post-confirmation accountings have shown no net income due to substantially increased expenses. The four post-confirmation quarterly accountings are attached hereto as **Composite Exhibit A**. The accountings show increased expenses which stand in sharp contrast to the expenses listed in the Debtors' monthly operating reports and budget for the Confirmed Plan.

9. Wells Fargo has sent multiple letters requesting further explanations and additional details relating to the increased expenses (collectively, the "Letters"). Copies of the Letters are attached hereto as **Composite Exhibit B**. In responding to the Letters, the Debtors have failed to correct the deficiencies raised by Wells Fargo with the quarterly accountings and/or failed to adequately explain the increased expenses and provide appropriate documentation validating the expenses incurred (collectively, the "Responses"). The Responses are attached hereto as **Composite Exhibit C**.

10. Of note, the expenses relating to (a) property maintenance; (b) utilities; (c) vehicle parts; and (d) vehicle repairs and maintenance have increased drastically in the post-confirmation quarterly reports that have directly resulted in next to no net income to pay Wells Fargo.

11. The Debtors' purported failure to generate net income deprives Wells Fargo of a payment stream which it negotiated as part of the Confirmed Plan. Additionally, a lack of net

---

[1] This Court had previously set officers' salary at $12,000 per month. See Doc. No. 147. The $3,000 per month increase in officers' salary equals $180,000 over five years, which is the time the Debtors have to pay the Second Secured Claim.

income makes it highly unlikely the Debtors can satisfy the Second Secured Claim by the deadline set in the Confirmed Plan. The Debtors are required to pay the Second Secured Claim with interest by August 15, 2018 (the "<u>Payment Deadline</u>").[2] The Confirmed Plan contemplates the majority of the Second Secured Claim being paid via the quarterly net income distributions.[3] Absent such payments, there will be a sizeable outstanding balance; at this rate most likely the entire principal will be owed on the Second Secured Claim on the Payment Deadline. Given that all of the Debtors' assets are encumbered (by Wells Fargo and certain floor financiers), it is not likely that the Debtors can find third party funding sufficient to pay off the First Secured Claim and the Second Secured Claim by the Payment Deadline. As such, absent quarterly net income distributions to Wells Fargo, the Debtors will not be able to satisfy their obligations under the Confirmed Plan.

## LEGAL AUTHORITY

12. Section 1112(b) of the Bankruptcy Code provides that on the request of a party in interest, and after notice and a hearing, "the Court shall convert a case to a case under chapter 7 or dismiss a case under [chapter 11], whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1).

13. A non-exhaustive list of examples of "cause" warranting dismissal or conversion is set forth in §1112(b)(4) which includes, without limitation, a material default by the debtor with respect to a confirmed plan. *See* 11 U.S.C. § 1112(b)(4)(N).

14. This specifically enumerated factor is present such that this Court should grant Wells Fargo's Motion and convert this case to Chapter 7. *See In re Sundale, Ltd.*, 471 B.R.

---

[2] The Payment Deadline is calculated by using the first payment due Wells Fargo under the Confirmed Plan (i.e. August 15, 2013). See Doc. No. 200, p. 3, ¶ 5ii.
[3] The monthly $2,000 payment portion of the treatment of the Second Secured Claim will only total $120,000 and cover the interest due.

300, 302-03 (Bankr. S.D. Fla. 2012) (court converted a Chapter 11 bankruptcy case after substantial consummation because the plan was in material default).

15. The Debtor's failure to generate any meaningful net income due to the drastic and questionable increase in expenses constitutes a material default of the Confirmed Plan. Without steady, sizeable net income each quarter, the Debtor cannot satisfy its obligations to Wells Fargo under the Confirmed Plan. As noted above in paragraph 11, if things stay the same, the Debtor's $2,000 monthly payments to Wells Fargo will only cover the interest accruing and the entire principal amount of the Second Secured Claim (i.e. $410,000) will be unpaid as of the Payment Deadline. Given the total encumbrance of its assets, the Debtors cannot realistically hope to find third party financing to satisfy Wells Fargo's Second Secured Claim by the Payment Deadline. The absence of net income makes the Debtor's compliance with its obligations under the Confirmed Plan practically impossible.

**WHEREFORE**, Wells Fargo requests that this Court (1) grant the Motion, (2) reopen the Chapter 11 case; (3) convert the case to chapter 7; and (4) grant Wells Fargo such other and further relief that this Court deems appropriate.

*/s/ Lara R. Fernandez*
LARA R. FERNANDEZ
Florida Bar No. 0088500
lfernandez@trenam.com
LORI V. VAUGHAN
Florida Bar No. 0154921
Lvaughan@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
Suite 2700, Bank of America Plaza
101 East Kennedy Boulevard
Tampa, Florida 33602
Telephone: (813) 223-7474
Facsimile: (813) 229-6553

*Attorneys for Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFTY that on August 18, 2014, a true and correct copy of the foregoing WELLS FARGO'S MOTION TO REOPEN CHAPTER 11 AND MOTION TO CONVERT CASES TO CHAPTER 7 with Composite Exhibits was furnished by CM/ECF electronic mail to all those parties receiving electronic notices via CM/ECF and/or U.S. Mail to: **Debtors,** McGuinness II, Inc., 9700 East Colonial Drive, Orlando, FL 32817; JR Equity Corporation, 9700 East Colonial Drive, Orlando, FL 32817; **Debtor's Counsel**, Suzy Tate, P.A. , 14502 North Dale Mabry Highway, Suite 200, Tampa, FL 33618; Denise E Barnett, **U.S. Trustee**, Timberlake Annex, Suite 1200, 501 E. Polk Street, Suite 1200, Tampa, FL 33602; Rosa and James Catapano, 9700 East Colonial Drive, Orlando, FL 32817; and to all parties on the attached mailing matrix.

                                                  */s/ Lara R. Fernandez*
                                                  Attorney